UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

ALEJANDRO TREJO,

**FIRST AMENDED COMPLAINT**

**17 cv 960 (LAK) (KNF)**

**ECF Case**

Plaintiff,

vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
MATTHEW REGINA,
STEVEN JILLING,
and JOHN DOES 1-3,                          **JURY TRIAL DEMANDED**
in their individual and official capacities,

Defendants.

--------------------------------------------------------------x

Plaintiff Alejandro Trejo, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the illegal search and seizure, unlawful

imprisonment, denial of the right to a fair trial, and malicious prosecution of Alejandro

Trejo ("Plaintiff"), who was simply charging his cell phone in a park when a team of

NYPD Narcotics Detectives baselessly searched him and falsely accused him of selling

marijuana.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section

1983") against the individual defendants for illegal search and seizure, unlawful

imprisonment, malicious prosecution, denial of the right to a fair trial, and failure to

intervene, and a *Monell* claim against the City of New York for the same constitutional

violations.  Additionally, Plaintiff asserts analogous claims under New York Law against

the individual defendants, and against the City of New York under the doctrine of *respondeat superior*.  Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.    The individually named defendants Detective Matthew Regina (Shield # 2389) ("Det. Regina"), Detective Steven Jilling (Shield #3613), and Detectives John

2

Does 1-3 (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7.      On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Division.

8.      Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9.      Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10.      Plaintiff served a Notice of Claim on the City of New York – specifically, the Communications Unit of the NYC Law Department, Office of the Corporation Counsel – on November 9, 2016 .  At least 90 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

11.      The City of New York failed to demand a hearing pursuant to General Municipal Law § 50-h.

12.      This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

**INCIDENT**

13.     On the evening of March 25, 2016, Plaintiff was planning to meet a friend near Union Square Park (the "Park") in Manhattan.

14.     Around 9:00 p.m., because his cell phone battery was almost completely drained, Plaintiff went to the western portion of the Park, near 17th Street, where there is a free phone-charging station.

15.     Plaintiff plugged his cell phone to the power source at the charging station and began charging his phone.

16.     As Plaintiff did so, two other men were using the charging station.

17.     Plaintiff did not know those two men and had never seen them before.

18.     One of the men, whose name is Matthew Virtwal ("Mr. Virtwal"), offered to sell beer to Plaintiff and the other man at the charging station.

19.     Both Plaintiff and the other man declined Mr. Virtwal's offer.

20.     At no point in the Park did Plaintiff have any physical contact with Mr. Virtwal or the other man; they did not exchange any objects or engage in any transaction.

21.     At no point in the Park did Plaintiff do anything wrongful or suspicious.

22.     Suddenly, a group of NYPD Narcotics Detectives – the individual defendants – approached the charging station and accused the three men of being involved in illicit activity.

23.     The individual defendants searched the clothing and possessions of the three men at the charging station, including Plaintiff.

24.     Rummaging through Plaintiff's belongings, the individual defendants found one small baggie of marijuana inside Plaintiff's bag.

25.     From the outside, Plaintiff's bag did not reveal the presence of marijuana.

26.     The individual defendants allegedly found marijuana and heroin on Mr. Virtwal.

27.     Nothing unlawful was found on the third man, who was let go.

28.     The individual defendants arrested and handcuffed Plaintiff and Mr. Virtwal, and transported them to a police precinct.

29.     The individual defendants took Plaintiff's cell phone and cash, vouchering them as arrest evidence.

30.     At the precinct, the individual defendants discovered a bench warrant for Plaintiff's arrest, but they did not transport Plaintiff to Kings County Criminal Court, from which the warrant was issued.

31.     Instead, the individual defendants decided to accuse Plaintiff of a crime.

32.     The individual defendants collectively fabricated a narrative of what they observed at the charging station – specifically, the mendacious account that they had observed Plaintiff sell marijuana to Mr. Virtwal.

33.     The one baggie of marijuana recovered from Plaintiff did not match the bag(s) of marijuana allegedly recovered from Mr. Virtwal.

34.     Moreover, Mr. Virtwal insisted that Plaintiff had done nothing wrong.

35.     The individual defendants conveyed their false account of Plaintiff's behavior to the New York County District Attorney's Office ("DA's Office") – which, in turn, triggered Plaintiff's criminal prosecution.

36.     Plaintiff was transported to Central Booking in lower Manhattan where he remained detained in holding cells until his arraignment on the evening of March 26, 2016.

37.     On the basis of the individual defendants' account of Plaintiff's criminal conduct, Plaintiff was criminally prosecuted under Docket Number 2016NY020391 for selling marijuana pursuant to New York Penal Law Section 221.40 (a class "A" misdemeanor), which carries a maximum punishment of one year in jail.

38.     Specifically, the Criminal Court Complaint against Plaintiff – which was sworn to by Det. Regina – stated as follows (somewhat incoherently):  "I [Det. Regina] observed a separately charged defendant, Matthew Virtwal, hand the defendant [Plaintiff] a small object.  I further observed the defendant hand the separately charged defendant Trejo an object in return.  I took a bag of marijuana from the defendant's messenger bag. I took $447 US currency from the defendant.  I also took a bag of marijuana from separately charged defendant Trejo's left pants pocket."

39.     At Plaintiff's arraignment, the New York County District Attorney's Office requested $500 bail.

40.     The Judge at Plaintiff's arraignment released him on his own recognizance but ordered him to return to New York County Criminal Court at 100 Centre Street on a May 5, 2016.

41.     During the course of the prosecution, the DA's Office never requested any video surveillance footage from any of the NYPD surveillance cameras inside the Park.

42.     Plaintiff appeared in Criminal Court five times – on May 5, June 30, September 19, September 26, and November 7, 2016 – before the prosecution was finally dismissed on November 7, 2016.

43.     The prosecution was dismissed on the motion of the DA's Office after Plaintiff filed a motion to dismiss on grounds of facial insufficiency.

44.     During the course of the prosecution, the DA's Office would not allow Plaintiff to regain possession of his cell phone, which was seized from him upon his arrest and vouchered as arrest evidence.

45.     As a consequence, Plaintiff lost his ability to communicate with many of his contacts and experienced the inconvenience of living without his cell phone (a smart phone) for over seven months.

46.     After his case was dismissed, Plaintiff had to return to Criminal Court, obtain a release from the DA's Office, and go to One Police Plaza to regain his property.

**Individual Defendants' Failure to Request Argus Camera Footage**

47.     In the same area of the Park as the charging station, there were NYPD security cameras (known as "Argus" cameras).

48.     The Argus cameras captured the activity at the charging station where Plaintiff was arrested.

49.     The individual defendants never requested footage from those Argus cameras from the time in which they allege that Plaintiff sold marijuana.

50.     Such footage would have shown that Plaintiff did not sell marijuana and was simply charging his phone.

51.     The individual defendants never informed anyone from the DA's Office of the existence of any Argus cameras in the Park.

52.     Nowhere did the individual defendants document the fact that there were any Argus cameras in the Park.

**NYPD's Failure to Properly Utilize its Argus Cameras**

53.     The NYPD has installed and maintained thousands of Argus cameras throughout New York City.

54.     Each Argus camera records moving images.

55.     Unless specifically requested, footage from Argus cameras is preserved for thirty days before being erased.

56.     Argus cameras, which are usually mounted on a pole, capture human activity in the locations at which they are installed and thus have the ability to capture criminal activity and the lack thereof.

57.     Argus cameras can play an important role in resolving questions of guilt and innocence in the context of criminal prosecutions.

58.     Each Argus camera is located in a white box that is conspicuously marked with "NYPD" and "Security Camera."

59.     Each white box has two Argus cameras that capture different angles.

60.     Each Argus camera has a unique identification number.

61.     NYPD officers and detectives are not required to know the locations of the Argus cameras within the confines of their precinct.

62.     If an Argus camera existed in the area of alleged criminal activity, NYPD officers and detectives are not required to document that fact or bring it to the attention of prosecutors.

63.     NYPD officers and detectives can request video footage from Argus cameras.

64.     NYPD officers and detectives have absolute discretion as to whether to request Argus camera footage or notify prosecutors of the existence of such footage.

65.     NYPD officers and detectives receive no training with respect to Argus cameras.

66.     Because there is no requirement to preserve Argus camera footage, video proof of innocence can be destroyed.

**NYPD's Culture of Mendacity**

67.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

68.     There is a systemic failure by the City to identify, discipline, and supervise NYPD officers who fabricate criminal charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

69.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes a destructive custom and policy that fosters a culture of mendacity in the NYPD.

70.     The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to curb such conduct or weed out dishonest officers.

71.     The NYPD has no internal programs – not even rudimentary statistical software – that enable it to assess whether a particular Officer or Detective has an unusually high number of allegations of making false statements.

72.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.

73.     But NYPD officers usually face only minor discipline or no discipline whatsoever for making false statement on court documents.

74.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

75.     In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

76.     Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

77.     As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

78.     The Commission analyzes false statements in official criminal court

documents, including supporting depositions, criminal court complaints, summonses, and affidavits.  False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent people.

79.     Despite the importance of appropriately identifying and punishing officers who make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.

80.     Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

81.     For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.

82.     Such findings – which expose the gap between the NYPD's False Statement Policy and practice – can be found in virtually every Annual Report issued by the Commission.

83.     Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification. And there is no sign of improvement.

84.     In the specific context of fabricated court documents that falsely accuse

people of wrongdoing, the Commission has regularly found grossly inadequate punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

85.    To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.

86.    In the 2010 Annual Report, for instance, the Commission identified only ten IAB cases that included allegations of making an official false statement.

87.    The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know they can lie and get away with it.

88.    The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

89.    Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; and has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

90.    Defendant City has no system by which to proactively identify mendacious officers.  It waits for civilians to bring such officers to its attention.

91.    In the ten years prior to March 25, 2016, the number of NYPD investigations into police officers making false statements on criminal court accusatory instruments that

did not arise from civilian complaints was *zero*.

92.     In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

93.     Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

94.     Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

95.     Through the data cited herein along with public events (e.g. numerous civil rights lawsuits alleging fabrication every year, ticket-fixing scandals, evidence of an illegal quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.

96.     By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

97.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

98.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

99.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

100.     While the vast majority of police officers are decent people, they must operate in a police culture so truth-sick and cynical that their morale is crushed.

101.     NYPD officers see firsthand how roguish behavior is rewarded, trust thwarted, and virtue perverted within their ranks.  The negative incentives created by this sick culture threaten the safety, welfare, and liberty of every citizen.

**Damages**

102.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

       a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

       b.   Severe emotional trauma, distress, degradation, and suffering.

**<u>SECTION 1983 CLAIMS</u>**

**<u>FIRST CLAIM</u>**

**Deprivation of Federal Civil Rights Under Section 1983**

103.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

104.    All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

105.    All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

106.    The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

107.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Illegal Search Under Section 1983

108.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

109.    By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

110.    Without probable cause, a warrant, or consent, the individual defendants searched Plaintiff's bag, where Plaintiff had an expectation of privacy.

111.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Unlawful Detention Under Section 1983

112.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

113.    By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free from unlawful detention.

114.    As detailed above, the individual defendants intentionally detained Plaintiff without probable cause and without privilege or consent.  Although there was a bench warrant from Kings County Criminal Court, the individual defendants failed to take him to Kings County Criminal Court without "unnecessary delay" in accordance with NY Criminal Procedure Law Section 530.70(2).

115.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Malicious Prosecution Under Section 1983

116.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

117.    By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

118.    Without probable cause, the individual defendants maliciously and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

119.    The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

120.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Unlawful Seizure Under Section 1983

121.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

122.    By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable seizures.

123.    As detailed above, the individual defendants intentionally seized Plaintiff's property without reasonable suspicion, and without privilege or consent.

124.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Denial of the Right to a Fair Trial

125.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein

126.    By the actions described, the Defendants deprived Plaintiff of his right to a fair trial.

127.    The individual defendants fabricated allegations likely to influence a jury's decision and forwarded that information to the Manhattan District Attorney's Office.

128.    As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SEVENTH CLAIM

### Failure to Intervene Under Section 1983

129.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

130.    Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

131.    The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

132.    As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## EIGHTH CLAIM

### Municipal Liability Under Section 1983

133.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

134.    By the actions described, the Defendant City deprived Plaintiff of his Constitutional rights through its failure to train, supervise, and discipline mendacious and malicious officers; through its failure to train officers to request Argus video footage of alleged criminal activity (or otherwise having a policy to preserve such footage), leading to the destruction of proof of innocence for certain criminal defendants; and through its

fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

135.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

**False Imprisonment under N.Y. State Law**

136.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

137.     The individual defendants excessively detained Plaintiff without probable cause and without privilege or consent.

138.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SECOND CLAIM

**Malicious Prosecution Under N.Y. State Law**

139.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

140.     As detailed above, the individual defendants intentionally and with actual malice initiated a misdemeanor prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

141.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

142.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

143.    Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

144.    Without probable cause and without Plaintiff's consent, the individual defendants detained Plaintiff, searched his person and belongings, took his property, confined him, and initiated false charges against him.

145.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

<u>**FOURTH CLAIM**</u>

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
(Against Defendant City of New York)**

146.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

147.    Defendant City owed a duty of care to Plaintiff to prevent the unlawful search, false arrest, malicious prosecution, denial of fair trial, and mental and emotional abuse sustained by Plaintiff.

148.    Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

149.    Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

150.    Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

151.     As a result of its negligent conduct, Defendant City has directly and

proximately caused the damages and injuries hereinbefore alleged.

### SEVENTH CLAIM

**Respondeat Superior Under N.Y. State Law**

152.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

153.     Defendant City is the employer of the individual defendants.

154.     Under the doctrine of *respondeat superior*, the Defendant City is responsible

for the wrongdoing of its employees acting within the scope of their employment.

155.     As a direct and proximate result of the acts of the individual defendants

detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally

against the Defendants:

a.     An order awarding compensatory damages for Plaintiff Alejandro

Trejo in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be

determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is

entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.

DATED:       June 13, 2017                     _____s/_____

New York, New York

CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
Attorney for Alejandro Trejo